**Ruben DIAZ LUGO, et al., Plaintiffs,**

**v.**

**AMERICAN AIRLINES, INC., Defendant.**

**Civ. No. 87–0385(PG).**

United States District Court, D. Puerto Rico.

June 17, 1988.

---

A. Santiago Villalonga, Santurce, P.R., for plaintiffs.

José Vázquez García, San Juan, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Norma Figueroa and her husband, Rubén Díaz, sue American Airlines ("American") for burns she suffered when a cup of coffee spilled over her while on board one of American's flight to the Dominican Republic. The complaint contains causes of action based on Puerto Rican laws of negligence and of common carriers. 31 L.P.R.A. §§ 5141 and 4141.

Before us is American's motion for summary judgment.

Before we enter into the motion's merits, a procedural matter must be resolved. As we said, plaintiffs have affirmatively plead for relief only under local laws. On the pretrial order, however, plaintiffs advance the theory that American is also liable under "The Convention for Unification of Certain Rules Relating to International Transportation by Air," Oct. 12, 1929; 49 Stat. 3000, T.S. No. 876 (1934); note following 49 U.S.C. § 1502 ("the Warsaw Convention"). Furthermore, when American alleges in the motion at hand that the Warsaw Convention is the applicable law and that it is not liable under the convention, plaintiffs do not oppose the convention's applicability; on the contrary, they claim American is liable under it. Since all parties agree that the convention is a potential source of liability, we must then conclude that the complaint has been amended with the implicit consent of all parties to include independent causes of action by both plaintiffs under the Warsaw Convention. Fed.R.Civ. P. 15(b).

Knowing which claims are pending, we may now go into the motion's merits. Summary judgment must be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). An account of most of the material facts we need to know ensues.

On January 11, 1987, plaintiff Norma Figueroa was a paying passenger on board American's flight 909 from San Juan to the Dominican Republic. Figueroa was sitting on seat 23–C, which happens to be next to the aisle. Carlos Rafael Díaz, plaintiff's six-year-old son, was sitting to the left of Figueroa. Eduardo Manuel Díaz, plaintiff's eight-year-old son, was sitting to his brother's left.

After fifteen minutes or so from take-off, Figueroa asked the stewardess for a cup of coffee. Figueroa was filling out tourist entry cards while the stewardess was about to serve her the coffee. When the stewardess placed the cup on the tray in front of Figueroa, she was putting the cards and other documents between her left leg and her seat's left armrest. Figueroa did not notice when the stewardess placed the cup on the tray. While Figueroa was still placing the papers, the stewardess asked her if she wanted cream and sugar with the coffee. With a slight head movement Figueroa looked at the stewardess and said yes. Then, the coffee cup spilled on Figueroa's lap. She suffered burns in the pelvic and gluteal areas.

■ We will first look at the Warsaw Convention claim.[1] The convention terms

---

**1.** We part from the premise that the Warsaw Convention does provide an independent cause of action. Before the landmark decision of *Benjamins v. British Eurpoean Airways,* 572 F.2d 913 (2nd Cir.1978), all courts had held that the convention did not create a cause of action. *Maugnie v. Compagnie Nationale Air France,* 549 F.2d 1256 (9th Cir.1977); *Noel v. Linea Aeropostal Venezolana,* 247 F.2d 677 (2nd Cir.1957), *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d

are clearly applicable because the San Juan–Dominican Republic flight is "international transportation" under its Article 1(2). To determine whether American is liable, we must look at the convention's Article 17:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

■ American would be liable if an "accident" caused Figueroa's injuries. We believe there was an "accident" as that term has been interpreted under the convention.

■ In *Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), the Supreme Court of the United States defined an Article 17 "accident". The Court held that an "accident" was an unexpected or unusual event or happening that is external to the passenger. *Id.* at 400, 105 S.Ct. at 1342–43. Thus, liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger and not when the injury results from the passenger's own internal reaction to the usual, normal and expected operation of an aircraft. *Id.* at 405–406, 105 S.Ct. at 1345–46.

The coffee spill was an unusual or unexpected event external to Figueroa and, thus, an Article 17 "accident". When a person boards a plane, he does not expect that a cup of coffee will spill over his lap. The usual operation of an airplane does not require passengers to be spilled with hot coffee. An analogy with the *Saks* facts illustrates the point we are trying to make.

262 (1957); *Komlos v. Compagnie Nationale Air France,* 209 F.2d 436 (2nd Cir.1953), *cert. denied,* 348 U.S. 820, 75 S.Ct. 31, 99 L.Ed. 646 (1954). After *Benjamins,* however, federal courts of appeals have followed its holding. *Boehringer–Mannheim Diagnostics v. Pan Am World,* 737 F.2d 456 (5th Cir.1984); *In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400 (9th Cir.1983).

In *Saks*, a passenger sued an airline because she became permanently deaf in her left ear as a result of the changes in air pressure during a flight. After extensive discovery, all evidence indicated that the aircraft's pressurization system had operated in the usual manner. Thus, the issue in the case was "whether a loss of hearing proximately caused by normal operation of the aircraft's pressurization system is an accident within the meaning of Article 17." *Id.* at 395, 105 S.Ct. at 1340. The Court held that there was no "accident"; it refused to hold that the occurrence of the ear injury itself was an Article 17 "accident".

An "accident" would have been an unusual or unexpected event causing the ear injury. The injury, however, had been caused by the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft. *Id.* at 406, 105 S.Ct. at 1345–46.

Figueroa's injuries did not result from her internal reaction to normal airplane operations. Her injuries were caused by an unexpected event external to her, *i.e.,* coffee spilling over her body. Unlike the plaintiff in *Saks,* Figueroa is not asking us to hold that the injuries themselves were an "accident".

American wants us to go back in the chain of causes resulting in the spill, find as a matter of fact that the plane's inclination caused the spill, and hold that the inclination is not an Article 17 "accident". We need not go that far back in the chain.

"Any injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger."

The coffee spill is a link that meets that description.

We have chosen to follow the current trend of interpretation even though we believe the pre-*Benjamins* case law is based on solid grounds. *See also* Judge Van Graafeiland's dissent in *Benjamins,* 572 F.2d at 919. We commend to our court of appeals to make a thorough examination of the issue when faced with it.

Of course, just because Article 17 liability triggers does not mean that American is absolutely liable for all damages suffered by Figueroa. American may avoid some or even all liability by proving Figueroa caused or contributed to cause the coffee spill.[2] Article 21 of the Warsaw Convention. We cannot rule on this defense now; the trier of facts will have to decide what caused the coffee spill.

■ Since we have held that there was an Article 17 accident and, therefore, that the Warsaw Convention is the law of the case, we need not entertain Figueroa's local claims. The convention's limitation and theory of liability are exclusive when, as here, all of Article 17 conditions have been met. *Abramson v. Japan Airlines Co., Ltd.*, 739 F.2d 130, 133–134 (3rd Cir.1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 *reh'g. denied*, 471 U.S. 1112, 105 S.Ct. 2350, 85 L.Ed.2d 866 (1985).

Figueroa's husband, Rubén Díaz, brings causes of action based on Puerto Rican negligence and common carrier laws, 31 L.P.R.A. §§ 5141 and 4141, and, as we already held, *supra*, p. 374, on the Warsaw Convention Díaz alleges to have suffered emotional distress and loss of consortium due to his wife's injuries. American believes that the convention does not provide relief for Díaz's injury and that Díaz's local cause of action must be dismissed because the damages he allegedly suffered do not reach the minimum jurisdictional amount.

American claims that if the convention's liability triggers, it is liable only for damages sustained by the passenger. Accordingly, American does not think that Díaz may recover based on the convention. We cannot agree with such restrictive interpretation of the convention's damages provision.

Article 17 reads in its pertinent part: "The carrier shall be liable *for damage sustained* in the event of the ... wounding of a passenger or any bodily injury suffered by a passenger...."

This language does not limit the recoverable damages to those suffered by the passenger. The article does not state that American shall be liable *for damage sustained by a passenger* if he dies or suffers bodily injury; it says American will be liable *for damages sustained without specifying who suffers them.*

A reading of the convention's Article 24 suggests that the restrictive construction of Article 17 is incorrect.

### Article 24

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, *without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.* (Emphasis ours)

This article presupposes that there will be Warsaw Convention plaintiffs other than passengers suing for damages suffered or passengers' representatives suing for damages suffered by a passenger in case of his death.

■ Furthermore, Article 17 has been interpreted to afford an independent wrongful death action. *Benjamins* and *In re Mexico City Aircrash*, *supra*, n. 1. Beneficiaries of a passenger dying in an Article 17 "accident" would be able to recover for damages they have suffered as a result of the passenger's death. We do not see why we should allow damages to a non-passenger for his suffering in case of a passenger's death while disallow them if the passenger suffers bodily injury but does not die.

As to Díaz's local claims, what we held about Figueroa's is equally applicable to them. *See supra* p. 376. Since Article 17 conditions have been met, the convention is

---

**2.** However, American, as a signatory of the "Montreal Interim Agreement," 31 F.R. 7302, Agreement CAB 18900 (1966), cannot avail itself of any defense under the convention's Article 20(*1*) (freeing carrier from liability if all precautionary measures taken).

the exclusive source of remedies and the local claims need not be reviewed.

WHEREFORE, for the reasons stated, defendant's motion for summary judgment is hereby DENIED.

IT IS SO ORDERED.